IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LARRY BOSKET, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NCO FINANCIAL SYSTEMS, INC. )<br>)<br>Defendant. ) | Case No. 3:11-cv-00678-LEK-DEP |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**

Plaintiff, Larry Bosket ("Plaintiff"), by and through his attorneys, Weisberg & Meyers, LLC, hereby submits his Motion for Attorneys' Fees and Costs and Memorandum of Law. In support thereof, Plaintiff respectfully states as follows:

**I.   INTRODUCTION.**

Plaintiff did not initiate any business with Defendant, NCO Financial Systems, Inc. ("Defendant"). Rather, Defendant obtained Plaintiff's information from a third party creditor to Plaintiff, and for its own profit, began communicating with Plaintiff in an effort to collect an alleged debt. Defendant's contacts and communications violated Plaintiff's federal Fair Debt Collection Practices Act rights, and as such, Plaintiff retained Weisberg & Meyers, LLC to protect his consumer rights.

On June 16, 2011, shortly after Plaintiff failed in his efforts to resolve any outstanding dispute with Defendant prior to litigation, Plaintiff filed his original complaint against Defendant alleging violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Defendant filed its answer on August 1, 2011, denying Plaintiff's claims. The parties engaged in settlement discussions, and on or about August 1, 2011 Defendant served

1

Plaintiff with an offer of judgment.  Plaintiff filed his acceptance of the offer of judgment on August 15, 2011.  Per the terms of the agreement, Plaintiff is the prevailing party, and the remaining issue is the recovery of attorney's fees and costs by the Plaintiff; under the agreement, this Court's Judgment of September 12, 2011, as well as the fee-shifting provision included in the FDCPA, 15 U.S.C. § 1692k.

## II. PROCEDURAL HISTORY.

On June 16, 2011, Plaintiff filed his original complaint against Defendant alleging violations of the FDCPA.  (Doc. 1).  Defendant filed its answer on August 1, 2011, and simultaneously served Plaintiff with an offer of judgment.  (Doc. 5; Doc. 8-1).  On August 15, 2011, Plaintiff filed a notice of acceptance of Defendant's offer of judgment.  (Doc. 8).  On August 19, 2011, the parties engaged in a status conference before the Court regarding the accepted offer of judgment, in which the Court advised the parties to attempt to settle the issue of attorney's fees.  On August 26, 2011, another conference was held before the Court, during which the parties discussed the status of settlement discussions. It was decided that the parties would continue their dialogue and report back to the Court.  At the subsequent conference before the Court on September 9, 2011, the parties reported to the Court that they were unable to resolve the matter, and the Court directed the clerk to enter judgment.   On September 12, 2011, the Court entered judgment in favor of Plaintiff pursuant to the parties' agreement.  (Doc. 10).

## III. SETTLEMENT HISTORY.

Plaintiff's counsel first contacted Defendant on or about May 11, 2011 to advise Defendant of Plaintiff's claims and representation in this case, as well as to provide an initial demand to settle all claims for $7,500.00, inclusive of all damages, attorneys' fees and costs. (See Correspondence dated May 11, 2011, attached hereto as Exhibit A).  On May 17, 2011

defense counsel informed Plaintiff's counsel that Defendant had received notice Plaintiff's claims and would investigate and respond as soon as possible. (See Correspondence dated May 17, 2011, attached hereto as Exhibit B). When Plaintiff received no further response, Plaintiff's counsel followed up on June 1, 2011 in effort to settle and avoid court involvement. (See Correspondence dated June 1, 2011, attached hereto as Exhibit C). Plaintiff again received no response and so had no choice but to file his complaint. (Doc. 1).

After the complaint had been filed, Defendant offered Plaintiff $1,775.00, inclusive of all damages, attorney's fees and costs. (See Correspondence dated June 17, 2011, attached hereto as Exhibit D). Plaintiff responded by lowering its demand to $6,900.00. (See Correspondence dated June 21, 2011, attached hereto as Exhibit E). Defendant counteroffered $2,000.00 to settle all claims. (See Correspondence dated July 5, 2011, attached hereto as Exhibit F). Plaintiff countered by again lowering its demand to $6,500.00. (See Correspondence dated July 6, 2011, attached hereto as Exhibit G). Thereupon, Defendant's counsel asked if Plaintiff could provide any recordings to support his claims, which Plaintiff's counsel produced in order to assist Defendant in evaluating its liability. (See Correspondence dated July 9, 2011, attached hereto as Exhibit H).

On August 1, 2011, defense counsel requested a demand from Plaintiff, and so Plaintiff's counsel reiterated Plaintiff's earlier demand of $6,500.00, to which Defendant did not respond, and agreed to keep the demand open for one week. (See Correspondence dated August 1, 2011, attached hereto as Exhibit I). Thereupon, Defendant submitted its offer of judgment, for judgment to be entered against Defendant in the amount of $1,500.00 in damages, plus Plaintiff's attorney's fees and costs. (Doc. 8-1). Upon Defendant's request, Plaintiff submitted a demand to settle the issue of fees and costs for $3,995.00. (See Correspondence dated August 17, 2011,

attached hereto as Exhibit J). Defendant counteroffered $2,500.00 in fees and costs, which Plaintiff rejected in light of the amount of time invested in the file. (See Correspondence dated August 19, 2011, attached hereto as Exhibit K).

The parties were unable to subsequently resolve the issue of fees and costs, despite further correspondence and conferences before the Court. Accordingly, Plaintiff presents the instant Motion for Attorneys' Fees and Costs, detailing the time spent by his counsel and the clear fee-shifting mandate of the FDCPA.

### IV.    THE PLAIN LANGUAGE OF THE FDCPA MANDATES THAT PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS.

15 U.S.C. § 1692k(a) provides in pertinent part:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person **is liable** to such person in an amount equal to the sum of—
>
> \*        \*        \*
>
> (3) in the case of any successful action to enforce the foregoing liability, **the costs of the action, together with a reasonable attorney's fee as determined by the court**.

15 U.S.C. § 1692k(a) (emphasis added).

"Given the structure of [15 U.S.C. § 1692k], attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general." *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) (reiterating that several courts have required an award of attorney's fees even where violations were so minimal that statutory damages were not warranted); *see also French v. Corporate Receivables, Inc.*, 489 F.3d 402 (1st Cir. 2007) (finding that an award of attorney's fees to successful plaintiffs under the FDCPA is obligatory); *Miller v. Midpoint Resolution Group, LLC*, 608 F. Supp. 2d 389

4

(W.D.N.Y. 2009) (holding that once a violation of the FDCPA is found, an award of attorney's fees and costs is mandatory); *Teng v. Metropolitan Retail Recovery*, 851 F. Supp 61 (E.D.N.Y. 1994) (noting that the structure of the fee shifting provision included in the FDCPA mandates attorney's fees as the means of fulfilling congressional intent that the act be enforced by private attorneys general).

Discussing the mandatory nature of the fees shifting provision included in the FDCPA, the Ninth Circuit detailed that "[t]he reason for mandatory fees is that congress chose a 'private attorney general' approach to assume enforcement of the FDCPA." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008); *see also Tolentino v. Friedman*, 46 F.3d 645, 651-52 (7th Cir. 1995); *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991). The Seventh Circuit, in similar fashion, explained that the public as a whole has an interest in the vindication of statutory rights, and Congress' specific intent under the FDCPA was to facilitate an individual plaintiff's ability to pursue an action where the economic burden of costs and fees would otherwise preclude enforcement. *Tolentino*, 46 F.3d at 652. Quoting the United States Supreme Court, the Seventh Circuit additionally made clear: "Unlike most private tort litigants, a plaintiff who brings an FDCPA action seeks to vindicate important rights that cannot be valued solely in monetary terms." *Id*.

## V. PUBLIC POLICY SUPPORTS AN AWARD OF ATTORNEYS' FEES AND COSTS TO PLAINTIFF.

Congress announced in enacting the FDCPA: "There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692. The purpose of the FDCPA, as stated by Congress, is "to eliminate abusive debt collection practices by debt

5

collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Id. The fee shifting provision included in the FDCPA enables consumers to vindicate their personal rights while benefitting society in general, resulting in greater deterrence of fraudulent and deceptive business practices. *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996); *Foti v. NCO Financial Systems, Inc.*, 424 F. Supp. 2d 643, 653 (S.D.N.Y. 2006).

Difficulty in enforcing statutes like the FDCPA, and its state law counterparts, by private attorneys general arises in part because, unlike personal injury actions, at the commencement of litigation the potential for recovery is not clear. *Bowers v. Transamerica Title Insurance Company*, 675 P.2d 193, 204 (Wash. 1983). What's more, the amount in controversy is usually too small to induce an attorney to commence litigation on a percentage contingency. *Id*. As well, litigation costs are an expense of doing business for corporations, whereas the average consumer doesn't have the economic staying power to engage in protracted litigation, thereby providing larger companies a unique advantage over consumers. *Chrysler Corporation v. Maiocco*, 552 A.2d 1207 (Conn. 1989).

Accordingly, "the purpose of the statutory fee award is to benefit the plaintiff by allowing the plaintiff to obtain counsel in order to pursue redress for relatively small claims." *Majcher v. Laurel Motors, Inc.*, 287 Ill. App. 3d 719, 732 (Ill. Ct. App. 1997); *see also Grove v. Huffman*, 262 Ill. App. 3d 531, 539 (Ill. Ct. App. 1994) ("To hold otherwise would discourage injured parties from seeking relief…and would be counterproductive to the [congressional] purpose…"). By providing the private bar with incentive to involve itself in consumer litigation through fee-

shifting, the government is relieved of the costs of protecting consumers while insuring that consumers may still avail themselves of their statutory rights.

Lacking a sufficient award of attorney's fees and costs, an entry of judgment for the consumer would not make the consumer whole, as the average consumer would be unable to pay his attorney's fees, creating a deterrent for private attorneys to pursue this type of action. Fee shifting provisions are put in place to remove the difficulty of obtaining counsel in pursuing claims which are relatively small compared to potential legal costs. *Grove*, 262 Ill. App. 3d at 539.

## VI. AN AWARD OF ATTORNEYS' FEES AND COSTS UNDER THE FDCPA IS TO BE BASED UPON ACTUAL TIME EXPENDED, AND NOT THE AMOUNT OF RECOVERY.

Enforcement of a plaintiff's rights under the FDCPA through the courts is prohibitively expensive. Awarding fees based upon actual time expended, rather than amount of recovery, makes economically feasible the pursuit of remedies by consumers in state and federal courts.[1] There exists a strong presumption that the lodestar amount represents an adequate and proper fee

---

[1] Analogous federal consumer protection statutes have likewise been interpreted in such manner. *See* S. Rep. 93-151 at 24 ("It should be noted that an attorneys' fee is to be based on actual time expended rather than being tied to any percentage of the recovery."). Courts analyzing the fee shifting provision included in the federal Magnuson-Moss Warranty Act have noted: "In consumer protection as this, the monetary value of the case is typically low. If courts focus only on the dollar value and the result of the case when awarding attorney fees, the remedial purposes of the statutes in question will be thwarted. Simply put, if attorney fee awards in these cases do not provide a reasonable return, it will be economically impossible for attorneys to represent their clients. Thus, practically speaking, the door to the courtroom will be closed to all but those with either potentially substantial damages, or those with sufficient economic resources to afford the litigation expenses involved. Such a situation would indeed be ironic: it is but precisely those with ordinary consumer complaints and those who cannot afford their attorney fees for whom these remedial acts are intended." *Jordan v. Transnational Motors, Inc.*, 537 N.W.2d 471, 474 (Mich. Ct. App. 1995); *see also Bobby Jones v. Fleetwood Motor Homes*, 127 F. Supp. 2d 958, 972-73 (N.D. Ill. 2000) (declining to reduce the consumer's award of attorneys' fees simply because the consumer recovered only $5,000 on a $92,000 motor home or only five (5) percent of the amounts sought: "As previously indicated, the statute provides that fee awards are to be based on time actually expended and legislative history supports that the fee award is not to be tied to a percentage of the recovery. Therefore, as long as the time expended was reasonable, it would be inappropriate to reduce the fee award because it might be considered disproportionate to the $5,000.00 in damages that that plaintiff actually recovered. No reduction will be made solely based on the amount of damages plaintiff obtained.").

award. *Hensley v. Eckhart*, 461 U.S. 424, 533 (1983); *see also City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986) ("[R]easonable attorney's fees . . . are not conditioned upon and need not be proportionate to an award of money damages.").

Also significant, particular to the lodestar calculation, the hourly rate for each advocate is to be based on the prevailing rate in the community for that individual's level of legal skill and experience. *Blum v. Stenson*, 465 U.S. 886 (1984). The Seventh Circuit observed, with explicit reference to the FDCPA:

> In order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases. As we noted in *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993), "Our recent cases have stressed that the best measure of the cost of an attorney's time is what that attorney could earn from paying clients. For a busy attorney, this is the standard hourly rate. If he were not representing this plaintiff in this case, the lawyer could sell the same time to someone else. That other person's willingness to pay establishes the market's valuation of the attorney's services."

*Tolentino*, 46 F.3d at 652.

The Third Circuit similarly stated:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*Student Public Interest Research Group v. AT & T Bell Laboratories*, 842 F.2d 1436, 1449 (3d Cir. 1988).

In most cases filed pursuant to the FDCPA, an award of attorneys' fees to a prevailing party greatly exceeds the damage award. *See Cope v. Duggins*, 203 F. Supp. 2d 650 (E.D. La. 2002); *Silva v. National Telewire Corp.*, 2001 U.S. Dist. LEXIS 20717 (D.N.H. 2001) (awarding attorneys' fees in the amount of $59,288.50 and costs and expenses in the amount of $5,338.45).

**VII.  TIME SPENT PREPARING AND LITIGATING THE ATTORNEYS' FEE PETITION IS RECOVERABLE.**

In cases brought under fee-shifting statutes, where the prevailing party is forced to incur time and effort litigating its petition for attorneys' fees, such time is recoverable.  District courts may award attorneys' fees and costs for time spent litigating the issue of attorneys' fees.  *See e.g., La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 336 (5th Cir. 1995); *Hairston v. R&R Apartments*, 510 F.2d 1090, 1093 (7th Cir. 1975) ("…if no fees are awarded, the burden of the costs is placed on the organization providing the services, and it correspondingly may decline to bring such suits and decide to concentrate its limited resources elsewhere, thereby curtailing the forceful application of the Act that Congress sought"); *Brandenburger v. Thompson*, 494 F.2d 885 (9th Cir. 1974); *Miller v. Amusement Enterprises, Inc.*, 426 F.2d 534 (5th Cir. 1970).

> As the Third Circuit has stated:
>
> If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours will be correspondingly decreased. Recognizing this fact, attorneys may become wary about taking . . . cases for which attorneys' fees are statutorily authorized. Such a result would not comport with the purpose behind most statutory fee authorizations, Viz, the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies.

*Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978); *see also Burchett v. Bower*, 470 F. Supp. 1170, 1173 (D. Ariz. 1979) ("[T]ime spent in preparing and litigating the fees petition should be compensated accordingly.").

In an FDCPA action, "where the FDCPA's attorney's fee provision explicitly distinguishes attorney's fees from awardable 'costs,' Rule 68 does not preclude Plaintiff from recovering attorney's fees incurred after the date of the Offer."  *Valencia v. Affiliated Group, Inc.*, 674 F. Supp. 2d 1300, 1304 (S.D. Fla. 2009).  An offer of judgment may not "implicitly or explicitly" exclude attorneys' fees or costs.  *Marek v. Chesny*, 473 U.S. 1, 6 (1985).  A Rule 68

9

offer of judgment consists of two components: "(i) the substantive relief proposed, which may be a sum of money . . . and (ii) costs, including a reasonable attorney's fee." *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 365 (1981) (Powell, J., concurring). "The offer should specify the first component with exactitude. But **the amount of the fee is within the discretion of the court** if the offer is accepted." *Id.* (emphasis added). "It would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008).

### VIII. THE RATES SOUGHT BY PLAINTIFF'S ATTORNEYS ARE REASONABLE AND COMMENSURATE WITH THEIR EXPERIENCE IN THE FIELD OF CONSUMER PROTECTION.

A reasonable fee is judged against the prevailing market rate for attorneys of comparable experience employed in cases of similar complexity. Plaintiff's counsel have expended a total of 23.7 hours of attorney, paralegal and legal assistant time at hourly rates ranging from $100.00 per hour to $335.00 per hour. (See Statement of Services, attached hereto as Exhibit L; see also Declaration of Joe Panvini, attached within group Exhibit N). Specifically, Plaintiff's counsel's time and rates are broken down as follows:

| ATTORNEY | HOURS | RATE | TOTAL |
|---|---|---|---|
| Alex Weisberg | 0.7 | $ 335.00 | $ 234.50 |
| Marshall Meyers | 1.3 | $ 335.00 | $ 435.50 |
| Craig Ehrlich | 2.7 | $ 335.00 | $ 904.50 |
| Dennis Kurz | 6.2 | $ 335.00 | $ 2,077.00 |
| Joe Panvini | 5.2 | $ 175.00 | $ 910.00 |
| Tremain Davis, Paralegal | 2.8 | $ 135.00 | $ 378.00 |
| Jessica DeCandia, Paralegal | 1.1 | $ 135.00 | $ 148.50 |
| Jeanette Soto, Paralegal | 0.8 | $ 135.00 | $ 108.00 |
| Elizabeth Brown, Paralegal | 0.2 | $ 135.00 | $ 27.00 |
| Gloria Ramirez, Legal Assistant | 1.2 | $ 100.00 | $ 120.00 |
| Natasha Stewart, Legal Assistant | 3.2 | $ 100.00 | $ 320.00 |
| Nick Skrdla, Legal Assistant | 0.3 | $ 100.00 | $ 30.00 |
| | | **TOTAL:** | $ 5,692.50 |

The hourly rates of Plaintiff's attorneys, paralegals, and legal assistants, delineated in Plaintiff's Statement of Services, are commensurate with the experience and training of each employee at Weisberg & Meyers, LLC. These rates are also supported by the 2007 Consumer Law Attorney Fee Survey, the U.S. Attorney's "Laffey Matrix," as well as the declarations of other consumer advocates. Numerous recent FDCPA cases have also approved rates of at least $300.00 per hour for experienced attorneys who were experts in the field of consumer protection law. *See e.g. Dowling v. Litton Loan Servicing, L.P.*, 320 Fed. Appx. 442 (6th Cir. 2009) ($300 hourly rate fell within range of reasonableness for litigators of counsel's skill level and experience in that community); *Larsen v. JBC Legal Group, P.C.*, 588 F. Supp. 2d 360 (E.D.N.Y. 2008) (hourly rate of $300 was reasonable where attorney had practiced law for 17 years, focused on consumer law for 7 years, and had significant experience in consumer protection litigation); *Cope v. Duggins*, 203 F. Supp. 2d 650 (E.D. La. 2002) (the reasonable hourly rate for attorneys fees under the FDCPA is the prevailing market rate for attorneys of comparable experience in cases of similar complexity). In fact, according to the Seventh Circuit, paying counsel in an FDCPA case at rates *lower* than those that they could obtain in the marketplace is *inconsistent* with the congressional desire to enforce the FDCPA through private actions. *Tolentino v. Friedman*, 46 F.3d 645 (7th Cir. 1995).

### A.   The Experience Of The Attorneys At Weisberg & Meyers Provides Support For The Hourly Rates Requested.

Plaintiffs attorneys' experience is summarized in the Weisberg & Meyers, LLC firm resume, attached hereto as Exhibit M, and further supported by the affidavits of Weisberg & Meyers attorneys, contained within group Exhibit N.

### B.   The Rates Sought By Weisberg & Meyers Are Reasonable Compared With The 2007 Consumer Law Attorney Fee Survey Of Prevailing Market Rates.

In the fall of 2007, a survey was conducted of consumer advocates across the country to determine the rates charged by attorneys practicing in the area of consumer protection, grouped by "attorney's years in practice, location of practice, and size of firm." (See 2007 Consumer Law Attorney Fee Survey, attached hereto as Exhibit O). Page 6 of the attached survey shows that the average billing rate for consumer law firms with more than five attorneys in New York is $358 per hour. Page 12 indicates that the average billing rate generally increases commensurate with years of experience. The rates sought by Plaintiff's attorneys are less than or comparable with these averages.

### C.   The Rates Sought By Weisberg & Meyers Are Reasonable Compared With The United States Attorney's Office's "Laffey Matrix."

The attorney's fees rates requested by Plaintiff through Plaintiff's attorneys' Statement of Services are commensurate with the prevailing rates for attorneys that practice federal law. This case was filed pursuant to a federal remedial statute, the FDCPA, so it is fitting to compare rates charged by other attorneys practicing federal law to determine an appropriate rate. *See Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983) (wherein the court compared the rates of attorneys practicing under federal claims with fee-shifting provisions to reach a hybrid rate).

The United States Attorney's Office, Civil Division, took the *Laffey* court's analysis one step further, creating the "Laffey Matix" to reflect how inflation has changed billing rates over the years. The "Laffey Matrix" clearly demonstrates that the rates sought by Plaintiff's attorneys herein are reasonable compared to recognized rates for attorneys with similar experience. The "Laffey Matrix" is incorporated into this Fee Petition in its entirety:[2]

---

[2] This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to



## Civil Division

## LAFFEY MATRIX 2003-2011

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

| Experience  | 03-04 | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 | 09-10 | 10-11 |
|-------------|-------|-------|-------|-------|-------|-------|-------|-------|
| 20+ years   | 380   | 390   | 405   | 425   | 440   | 465   | 465   | 475   |
| 11-19 years | 335   | 345   | 360   | 375   | 390   | 410   | 410   | 420   |

recover "reasonable" attorney's fees. See, e.g., 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412 (b) (Equal Access to Justice Act). The matrix does not apply in cases in which the hourly rate is limited by statute. See 28 U.S.C. § 2412(d).

This matrix is based on the hourly rates allowed by the District Court in *Laffey v. Northwest Airlines, Inc.,* 572 F. Supp. 354 (D.D.C. 1983), aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984), cert. denied, 472 U.S. 1021 (1985). It is commonly referred to by attorneys and federal judges in the District of Columbia as the "Laffey Matrix" or the "United States Attorney's Office Matrix." The column headed "Experience" refers to the years following the attorney's graduation from law school. The various "brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more). *See Laffey*, 572 F. Supp. at 371.

The hourly rates approved by the District Court in *Laffey* were for work done principally in 1981-82. The Matrix begins with those rates. *See Laffey*, 572 F. Supp. at 371 (attorney rates) & 386 n.74 (paralegal and law clerk rate). The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5 (up if within $3 of the next multiple of $5). The result is subject to adjustment if appropriate to ensure that the relationship between the highest rate and the lower rates remains reasonably constant. Changes in the cost of living are measured by the Consumer Price Index for All Urban Consumers (CPI-U) for Washington-Baltimore, DC-MD-VA-WV, as announced by the Bureau of Labor Statistics for May of each year.

Use of an updated Laffey Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of Appeals subsequently stated that parties may rely on the updated Laffey Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n. 14, 1109 (D.C. Cir. 1995), cert. denied, 516 U.S. 1115 (1996). Lower federal courts in the District of Columbia have used this updated Laffey Matrix when determining whether fee awards under fee-shifting statutes are reasonable. *See e.g., Blackman v. District of Columbia*, 59 F. Supp. 2d 37, 43 (D.D.C. 1999); *Jefferson v. Milvets System Technology, Inc.,* 986 F. Supp. 6, 11 (D.D.C. 1997).

| 8-10 years | 270 | 280 | 290 | 305 | 315 | 330 | 330 | 335 |
| 4-7 years | 220 | 225 | 235 | 245 | 255 | 270 | 270 | 275 |
| 1-3 years | 180 | 185 | 195 | 205 | 215 | 225 | 225 | 230 |
| Paralegals & Law Clerks | 105 | 110 | 115 | 120 | 125 | 130 | 130 | 135 |

Based on the reasonable market rates in the "Laffey Matrix," the attached affidavits and attorney profiles, and other authority provided to this Court in Plaintiff's Petition for Attorneys' Fees, the hourly rates sought by Plaintiff's attorneys are reasonable and should be awarded in full.

### D. The Declaration of An Independent Consumer Protection Attorney Provides Support For The Hourly Rates And Time Requested By Plaintiff.

An independent consumer protection attorney familiar with FDCPA claims as brought herein has reviewed the hourly rates and time entries of Plaintiff's counsel. This attorney has attested that the rates and time incurred by Plaintiff's counsel are reasonable. (See Declaration of Todd M. Friedman, attached hereto as Exhibit P). Mr. Friedman has a wealth of experience in trial and appellate advocacy, and has represented thousands of consumers throughout the nation in numerous consumer actions, including claims brought pursuant to the FDCPA. Mr. Friedman has obtained the experience and qualifications necessary in the area of consumer protection litigation to present his opinion to this Court as to the reasonableness of Plaintiff's attorneys' fees.

### E. It Is Defendant's Burden To Present Evidence Contesting Plaintiff's Attorneys' Reasonable Rates.

"A party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified." *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989), cert. denied, 493 U.S. 1071 (1990) (awarding $5,500,000 in fees

14

on $3 recovery), cited in *Grant v. Martinez*, 973 F.2d 96 (2d Cir. 1992). The burden of proof is on the opponent to present specific evidence that a lower amount is appropriate. *See, e.g, United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989); *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992) (fee opponent must submit evidence). "[T]here is ordinarily no reason for a court to disregard uncontested affidavits of a fee applicant." *Brinker v. Giuffrida*, 798 F.2d 661 (3d Cir. 1986).

## IX. PLAINTIFF REQUESTS REIMBURSEMENT FOR COSTS EXPENDED.

Plaintiff seeks $425.00 in litigation costs incurred in relation to this matter. (See Request for Entry of Bill of Costs, filed separately and attached hereto as Exhibit Q).

## X. CONCLUSION

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). The FDCPA provides a maximum statutory recovery of $1,000.00 per action. 15 U.S.C. § 1692k(a). Here, Plaintiff recovered $1,500.00. Therefore, Plaintiff obtained excellent results and is entitled to a fully compensatory fee.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order awarding Plaintiff, and his counsel, attorneys' fees in the amount of $5,692.50 and costs in the amount of $425.00.

Respectfully submitted this 26th day of September, 2011.

              s/Dennis R. Kurz
              Dennis R. Kurz
              NY Bar No. 4570453
              Weisberg & Meyers, LLC
              Attorneys for Plaintiff
              300 International Drive, Suite 100

        Williamsville
        Buffalo, NY 14221
        (888) 595-9111 ext. 412
        (866) 842-3303 (fax)
        dkurz@attorneysforconsumers.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2011, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

John C. Person
Sessions, Fishman Law Firm
3850 North Causeway Blvd.
Suite 200
Metairie, LA 70002-7227
jperson@sessions-law.biz
*Pro Hac Vice*

Michael Del Valle
Sessions, Fishman Law Firm
130 John Muir Drive
Suite 106
Amherst, NY 14228
mdelvalle@sessions-law.biz

        Respectfully submitted,

        s/Dennis Kurz
        Dennis Kurz